The next matter or argument is Freedom From Religion Foundation v. New Kensington Arnold School District. I believe the time has been divided between two counsel on the appellant's side. Mr. Schneider. May it please the Court, Mark Schneider on behalf of the Plaintiff Appellants. In addition to the division of time mentioned by you, Judge Smith, I'd like to reserve three minutes for rebuttal. All right, so you'll be taking rebuttal very well. Thank you. Marie Schaub and her child, Doe 1, continue to reside within the New Kensington Arnold School District. Based upon their past and expected future contact with the Ten Commandments monument at issue in this case, they sought prospective relief in the form of an injunction and retrospective relief in the form of nominal damages. The facts supporting the claim for prospective relief and the standing for that claim are not in dispute. Once Doe 1 completed 7th and 8th grade in the New Kensington Arnold School District, she would move on to the high school in the district. So she's just like the plaintiff in Levi Weissman, right, I guess? That young lady was still, what, three or four years away from commencement? For purposes of the eminence necessary for the future harm related to the request for prospective relief, I agree the plaintiff is just like the plaintiff in Levi Weissman. This question is highly factual in nature, but the nature of standing necessarily depends on a lot of facts. Just for illustrative purposes, could you explain to me where the Ten Commandments monument was located, vis-à-vis not only the school but also any paths or roads that would have been traversed by the plaintiffs here? Yes, Your Honor, I don't think those facts are really in dispute. I don't think they are either. Sure, so I can speak to that, and I feel fairly confident that I don't think there will be any disagreement on this. The monument sits maybe ten feet or so from dual footpaths that cross it on either side, and those footpaths lead to a gymnasium entrance to the building. So this is an entrance that, while it is not what I guess the district considers the main entrance to the building, it is the entrance that students use whenever they exit the school bus in the morning to enter the building. So in particular, with respect to some of the past contact that the plaintiffs in this case had with the monument, they were attending sort of a community event, a karate event for Doe 1 at some point prior to this litigation. Well, I agree that there is no dispute, as I understand it, between the parties as to location. There may be some dispute in the record, or at least as to emphasis with respect to the conspicuousness of the monument. As I recall, there was some deposition testimony from the principal or the superintendent as to the times of day and the issue of darkness and just how conspicuous the monument would be or would have been, perhaps, to these plaintiffs. Sure. So there is no artificial lighting directed at the monument. So to the extent that there are other lighting fixtures around, the monument might be visible at dark, but I don't think that that's really a concern because all of the contact that the plaintiffs had prior to this litigation occurred during the day. And certainly some of the contact that would have occurred, even if we assume that part of the school year it's dark when students arrive at school, part of the school year it's plenty light out. What's your best case for standing for Doe 1? So I want to make sure to go back to my initial point and keep separated the claim for prospective relief and the claim for retrospective relief because each has to be analyzed separately. I agree. So with respect to the claim for prospective relief, our position is that Doe 1, in addition to being very similar to the Deborah Weissman in Lee v. Weissman, is also very similar to the plaintiffs, the student plaintiffs in Shemp. And in that, she faced, when she arrived at high school in two years' time, certain contact with this monument on a daily basis unless she assumed special burdens to avoid that monument. And so the mere fact that that was just a monument. Doesn't her mother have standing to bring that claim on her behalf right now? Isn't that your argument? It certainly is, Your Honor. So if the mother succeeds in getting the monument taken down as unconstitutional, why wouldn't we just focus on her standing rather than Doe 1? Well, I think that the – I mean, as a parent, certainly, she is interested in the religious or non-religious upbringing of her child, and so she would have that claim. But Doe 1 did testify that, as of the time of her deposition, she found the monument to nudge her, if not definitively compel her, to align her views with that displayed by the monument. Can you quote that? Because that wasn't my understanding of the record. She seemed quite indifferent to her exposure to the monument, at least her earlier exposure. Well, yeah, and let's remember that that earlier exposure, she was, I think, seven years old. So to the extent that she could even have an objection, all the more reason maybe why she doesn't have individual standing. With respect to the retrospective relief, I take Your Honor's point. But just to answer that question, it's 864 of the Joint Appendix, and the testimony was that she felt that the district kind of wanted her to be that way, and so she was referring to the message conveyed by the monument. Now, to Judge Hardiman's point, that testimony, when that feeling existed, is important in this case. And the record is admittedly unclear on whether that was a view that she held prior to the time the case was filed. But certainly, as of today, she holds that view. But the only point we have to focus on is what was her view at the time the case was filed. For purposes of standing, I agree, Judge Schwartz. I think the reason I emphasize that that being her view today is because we still feel that the claim for prospective relief is not moot. And part of that argument is that Doe 1 continues to object to the monument. But let's focus on standing, if we could. Sure. And if I understood your answers to my colleagues was the parent has standing and could seek the prospective injunctive relief. Arguably, there's cases, case law that says we don't need to consider for injunctive relief, whether anybody else has standing. Do you agree with that? I think that would be fair. But I just wanted to, the reason I wanted to emphasize Doe 1's potential standing is just to underscore the point that she does object to this monument. And it's not just a parent speaking on behalf of her child. But we need to look at what she, what manifestations of that occurred at the time of filing. Did I understand, though, your answer to Judge Hardiman that with respect to retrospective relief, which I assume you mean nominal damages, as it relates to Doe 1, are you abandoning that request? I didn't mean to suggest that, Your Honor. I do think that there's, to the extent that Doe 1's testimony is unclear as to whether she, when she found the monument objectionable, I think certainly her mother has the ability to sort of, What's unclear about when I saw it, I didn't really feel anything? And she's referring at that time to her past contact with it. And that's why I tried to draw the distinction between her later testimony, which I admitted was not, it was not framed in any time frame. Suppose that's a form of agnosticism. But to Judge Hardiman's point, I think it's very clear that with respect to the claim for prospective relief, Marie Schaub has standing. And the reason that that claim is not moot is because the plaintiffs are continuing to undergo burdens to avoid that monument on a daily basis. Well, and haven't you pleaded that she'd like to attend that high school? We have, Your Honor. And so that puts you just pretty much right in line with Levy-Weisman. Correct. And I'm probably being redundant here, but redundant to Judge Schwartz's questions. But do I understand both the jurisprudence and your responses to be that if we determine that the mother has standing, we need not even address the standing of Doe 1? I think that would be fair with respect to both claims. And what is it with respect to damages and injunctive relief? Correct. What is the basis for us to not have to address Doe 1 individually? Is it because a parent can bring a claim on behalf of the child and children generally are unable to express themselves sufficiently? Is that your theory? Well, I think that Marie Schaub has independent standing. So I guess – I assume for the purpose of this discussion I'm accepting that proposition. I'm going to focus on Doe 1. What is Doe 1's standing for nominal damages? Is it because we can't fix in time her present recitation? Right. So we'll assume for the purpose of my question we were still with what Judge Hardiman was talking about, which was she had no feeling. And that would be standing because it's not an affront to her. What do we look to for Doe 1 to have standing for damages? I think the only thing that the Court can look to is sort of the surrogate objection that comes from her mother. Thank you. And I would say – see, I'm into my rebuttal time. We'll have you back on rebuttal. Well, thank you very much, Mr. Schneider. And we can hear that from Mr. Woodworth.  Charles Woodworth, on behalf of Religious and Religious Liberty Organizations, is amici in support of plaintiffs. I'll keep this short. I was planning to focus today on the plaintiff's – the just disability of plaintiff's claim for prospective relief. In this case, as my brother already indicated, the school district forced plaintiffs to choose between exposing Doe 1 to daily unwanted contact with this monument or sending her to a high school in another school district away from her friends and her community in the town. And because Ms. Schaub chose to try to minimize the harm to her daughter as she saw fit, the district court held her claims moot. And that can't be correct. As this court noted, the removal of exposure to a religious display or the attempt to change behavior to avoid it is the basis for standing in the first place. And certainly here, also as this court just noted, the fact that the record establishes that if injunctive relief is provided by the district court, Doe 1 would be able to return to Valley High to complete her high school career, which I believe there's roughly two years left at this point. That said, I do not wish to rehash what this court already discussed. We think that in terms of standing at the time the complaint was filed, Levi Weissman, as Judge Hardiman indicated, is on point and shows that the plaintiffs here plainly had standing. In fact, to the extent that the use of an invocation or religious prayer at a graduation ceremony four years out in time is even potentially slightly less certain than the fact the continued existence of a 2,000-pound stone monument in front of a school, it's arguable that in this case it's even more certain. Are you suggesting it's easier to change a graduation program than to remove a 2,000-pound stone monument? Is that your argument? It may be. I don't think this court needs to decide that. And then also just in terms of mootness, as this court already indicated, obviously Doe 1 could return to Valley High, and I don't believe that's in dispute. So with that said, I will sit down and respectfully request that this court reverse the district court's decision and remand for a decision on the merits. Thank you, Mr. Woodruff. Thank you, Your Honor. Mr. Sanchez? May it please the Court, good morning. My name is Anthony Sanchez, and I represent the New Kensington Arnold School District. I was going to launch into my argument, but I'd like to clarify that fact about the location of the monument. The monument is on a path at the side of the school, not the main entrance, at the side of the school next to a parking lot, and there are records of fact, I believe they're cited too in the brief, the path gets no closer than 15 feet to this monument. If one attempts to see this from the road, there is land next to the school district, a parking lot, which is very wide, wider than a football field, then you get to the main road. It is very far away. In this case- So you can avoid it if you want? I don't think, I honestly don't think driving down that highway, you can see much of it, but maybe the side- Oh, but what if you're on school ground? You're still saying you can avoid it if one wants to? Yeah, easily. All right, well, there's a plaque that I have some familiarity with on the Allegheny County Courthouse that's also easily avoidable, right? And in the Pennsylvania Supreme Court, there's a case- A case I have some familiarity with called Modrovich, right? You're familiar with that case? Pardon? Modrovich, you're familiar with that case? Yes, I am familiar with that case, Your Honor. Well, he had standing. I mean, he lost on the merits, right? But he had standing. So why isn't this case just like Modrovich? In fact, Mr. Modrovich could have avoided walking past that plaque, it would seem, with greater ease than students who actually attend Valley High School are able to avoid the monument at question here. As lower court noted in his opinion, that these cases, the common strand is people, individuals are obliged to view a religious object when accessing public service or to reach their jobs. This was not the case. If that were true, then Modrovich shouldn't have had standing. I mean, Van Orden v. Perry. I mean, that monument, people didn't have to look at that. They could have approached public services in Texas a different way. There was no question of standing there. These cases are all decided on the merits. I think there's a little bit of a difference, though, with those cases in this case. Those cases were individuals going to a courthouse, going to a state building because there was a need. There was a public service, jury, going to court, and all these cases are like that. Going to a public school is something the government provides. It's an important service. I agree, but she did not go to that school. She's pleaded that she wants to, and we're not in a position to second guess that averment, are we? I understand that, but I think at the time, my understanding of standing, Judge Hardiman, is that one has to have standing at the initiation of the lawsuit. At that time, I do not believe she had standing because she was not compelled in any way to be by that. So you're saying the law, Mr. Sanchez, is that she has to enroll as a student at Valley High School, and then once she's enrolled as a student there, then she has standing to bring her case? Our case is a little different than Lee v. Weissman. When you look at the facts of Lee v. Weissman, that student, when in junior high school, was subjected to the school's practice of inviting clergy, rabbis, to speak at graduation, and then she was going to experience it again at high school. We don't have that kind of fact pattern here. We have facts that this student, and I believe you quoted her testimony, where she really wasn't impacted at all by seeing this. Well, that might mean she individually doesn't yet have standing, but it doesn't impact her mother's standing, right? Is not Mrs. Marie Schaub similarly situated to the father who brought the case in Lee v. Weissman? I don't think so, because really it's going to be exposure to the monument, or in that case. But she has been exposed to it. She pleaded that. She said it made her stomach turn or something like that. But not as any part of attending the school, not for any reason that she had to be at that school. She was at school for a karate event that was not sponsored by the school. All right, so that's an important point you make. I think there's a disagreement between both sides. You say almost it has to be compelled interaction with the monument. And the other side says that's not the law, right? I believe so. How is Mr. Modrovich compelled to go to the monument over at the Allegheny County Courthouse? I mean, there's no aspect of compulsion there. His pleading was, you know, I walk by there on the way to work, and there's a bus stop there that I might use from time to time. If he had standing there. I'm not familiar enough with that case, honestly, to talk about whether. They cite it in the brief. Right. And I apologize. But I don't believe. My memory is not that good. It was a long time. I remember the case happening, Your Honor. That I do recall. But I still say in these cases where we look at religious monuments, there are ten commandments in classrooms that students are seeing. There are prayers in classrooms that students are seeing. There are monuments at courthouses like Van Orden. There are things like that where people have to go to those buildings. The average citizen has to go to those buildings. State law requires people attend schools. Exactly. It's even more compulsory than the episodic trip to the, you know, county courthouse or Bureau of Motor Vehicles. Right. I agree. It's 180 days a year, right? Right. But she does not attend that school. But that's only because she, through her mother's decision, chose that she shouldn't because she didn't want the exposure. So she had to take on that burden. Why isn't that enough to give standing? Not when she initiated the lawsuit. When the lawsuit was initiated, she had no reason. She was not compelled in any reason. Who's the she? The daughter. Let's talk about the mom. I'm sorry, Your Honor. Go. The mom intended at the time she filed suit, according to the pleading, to send the daughter to that school. Why isn't that sufficient for her to have standing, meaning the missus? I believe Judge Hardiman hit where I was going with that. The distinction I make, or maybe it was Judge Smith. I apologize. The distinction is, in all of these cases, and I think that the lower court notes this fairly well, that the contact is frequent, regular, and not sporadic. Where does the frequency requirement come from? I noticed that, too. When the Supreme Court says, for standing purposes, you need an identifiable trifle, that doesn't sound like a requirement of frequency for standing purposes. So where does that come from? It comes from the analysis of these cases. In these cases, with regard, like I said, with commandments in a high school building, that student has to go in that building every day, has a right to public education, goes into that room every day. All these cases are like that. These individuals. Can we return to what you consider the standard to be for purposes of contact? Certainly. There has to be unwelcome contact, obviously. Okay. I think everybody agrees. Right. Everyone agrees with that. But I believe that there has to be, that it can't be sporadic. It can't be remote. Where did the district court get the standard that it applied? The sporadic, the court looked to a district court case that interpreted these cases. The court, if I recall the cases, Felix versus City of Bloomfield. And in that court case, the court interpreted these cases to that end. And I believe the court is right. I think when you look at all of these cases, and you look at the facts, they're all similar in the sense that it is a monument that is viewed when a person has a building that they have to be at for whatever reason, and that monument is in plain sight. Yes, sir. Okay. Yes, and I think that standard makes sense. I think it's distinguishable, as I said, from Lee versus Weissman, because that student had already been exposed to that and had to be. That was a student that was at a middle school graduation, and that, in fact, had occurred. So I think it was reasonable then for the court to say, yes, this is expected. This is going to happen. So from your point of view then, if we follow your logic, Mrs. Schaub should have enrolled her daughter at the school to confront the monument that the family believes is inconsistent with their beliefs for some period of time. So she would have had to expose herself to the offense of conduct, right, to be able to have standing. I don't believe that's so. I just believe that when she brought this lawsuit, there was no standing, because there was no imminent harm that didn't exist. So what is the logical result, however, other than to at least at some point or subsequently expose yourself to the very offensive contact that you sought to avoid? Perhaps the ‑‑ I'm representing a district, obviously, but perhaps plaintiff could have brought the lawsuit at a time in closer proximity to enrolling in the high school, at the time this lawsuit was brought. And when the student states that it didn't impact her or any of these kinds of things, that she didn't really care about it, she said that in her deposition in 19 ‑‑ pardon me, a few years after the actual date the complaint was filed. So there's a great deal of time there. So I ‑‑ What grade is the student in right now? Pardon me, Your Honor? What grade is the student in right now? The student now is in ninth grade, I believe. So if she files a complaint next week saying she'd like to attend Valley High School in the fall, you concede that she has standing? I believe so, and the school district would have a decision to make. Okay. I don't believe I have any additional details unless the Court has questions. All right. Thank you. Thank you. And, Mr. Schneider, you have rebuttal? Very briefly on the prospective relief claim, and then I want to move on to the retrospective relief claim briefly. As I hear the district's argument, there's really no ability of a plaintiff to seek to avoid a harm before it has actually happened. The eminence requirement in the standard for seeking prospective relief and the question of whether a plaintiff has standing addresses that very concern. There would be no concept of eminence and avoidance of future injury if that was not permissible. The district also says that under the district's view of the law, the contact with the monument must be compelled in some way. It's important to note that the claim for prospective relief envisions a scenario where Doe 1 would be compelled to come into contact with that monument. Yes, she hadn't been compelled to come into contact with it prior to the case being filed, but she certainly would have been compelled to come into contact with it when she became a student. So the prospective relief claim meets the very standard that the district argues exists, but that standard is too high. And the district court, in reaching this sort of frequency conclusion or regularity conclusion, relied upon a district court case in New Mexico and sort of cherry-picked limited language from, I think it was the Vasquez case, that noted in that case the contact was regular and frequent, not seldom and remote or something like that. If I could talk to you about this frequency requirement. If there were no frequency requirement, how would one ensure that a person who has no ties to the community but happens to just happen by something, a display, has standing based upon that sort of fleeting exposure and they just happen to go through the town, can they then bring a lawsuit if there's no frequency requirement? Well, I think there are other considerations other than frequency that would address that concern. And that sort of touches on the point that I wanted to make with respect to the retrospective relief claim. And really the task facing the court on that claim is one of line drawing. And we have the Valley Forge case, which gives a clear indication of what standing is not. You have out-of-state plaintiffs, have never been to the community, no risk of future contact, talking about a land transfer in Pennsylvania, residing in Maryland and Virginia. And then you have these cases around the country addressing Valley Forge and trying to say what is the standard for what standing actually is. And that's the direct and welcome contact standard that's been so often used by the court. So I would initially suggest that the clearest place to draw a line, a bright line, that can be repeated for future plaintiffs would be some contact versus no contact at all. But that could open the door to Judge Schwartz's concern if you have a passerby who goes through the community one time, no threat of future contact, they may never be there again, can that plaintiff bring a claim?  I concede that the district court would have to engage in an analysis of whether that fleeting contact constituted an injury in fact. The district court would. The district court would. If it did, then you're standing. And if it didn't, there's not. Right. And I think that there are some other check boxes that could be used in drawing this line that give the court or give future plaintiffs some objective guidance on whether they have standing in these cases. For example, are the plaintiffs members of the community? That's a very simple objective check box, and these plaintiffs check that box. Is there a risk of future contact with the monument? Again, very simple question to be asked. Certainly involves facts, but here the plaintiff checks that box as well. So I guess just to wrap up, I would say that we think it's very clear that with respect to the claim for prospective relief, there was future compelled contact, much like Lee versus Weissman, and that absolutely the plaintiffs have at least plaintiff Schaub has standing to bring that claim and that that claim is not moot because there's ongoing injury. With respect to the retrospective relief and the nominal damages, at least with respect to Ms. Schaub, I think it's important that this court correct the misapprehension of the standard that the district court used to find that the plaintiffs did not have standing under that claim for relief either. Thank you very much, Mr. Schneider. Thank you. And thank you to both of the counsel, to all of the counsel for their assistance and to us as we resolve this case, which is a very important case. Not only to the parties, but to standing jurisprudence in general. Thank you very much. We'll take the case under advisement. We'll ask the clerk to adjourn the hearing.